1
2
3
4
5
6
7
8
9
10
11
12

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,                    )
                                             )
                          Plaintiff,         )        Case No. 2:07-cr-00145-KJD-PAL
                                             )
vs.                                          )        **REPORT OF FINDINGS AND**
                                             )        **RECOMMENDATION**
RONNIE LEE JONES,                            )
                                             )        (Mtn to Suppress - Dkt. #442)
                          Defendant.         )
_____)

13      This matter is before the court on defendant Ronnie Lee Jones' Motion to Suppress Evidence

14   (Dkt. #442) which was referred to the undersigned for a report of findings and recommendation

15   pursuant to 28 U.S.C. § 636(b)(1)(B), and LR IB 1-3 and IB 1-4.  The court has considered the motion,

16   the Government's Omnibus Response to Defendants' Motions to Suppress (Dkt. #461), and Jones'

17   Reply (Dkt. #487).

18                                   **BACKGROUND**

19      Defendant Ronnie Lee Jones ("Jones") is charged in a Superseding Indictment (Dkt. #181) with

20   RICO conspiracy, drug conspiracy, and possession of firearms during a drug trafficking offense.  In the

21   current motion, he seeks to suppress evidence recovered from a residence at 1420 Helm Street in Las

22   Vegas, Nevada, pursuant to a state telephonic search warrant authorized by the Honorable Ann

23   Zimmerman, a Nevada Justice of the Peace, on March 27, 2006.  He also appears to be seeking to

24   suppress evidence obtained in a subsequent search of the same residence by state narcotics officers on

25   April 20, 2006.  Jones' motion refers to this as a "piggyback search warrant."  He has attached an

26   unsigned application and affidavit for a search warrant as Exhibit "C" to his motion.  The application

27   and affidavit are dated April 18, 2006.  However, the court has no information concerning whether this

28   search warrant was approved by a judicial officer, executed, and/or whether any evidence was seized as

a result of this second search warrant. A police report that is attached as Exhibit "B" to the motion indicates that after the telephonic search warrant was executed, "items indicating a meth lab" were located throughout the residence. As a result, the narcotics unit was called, and a narcotics detective "obtained a piggyback search warrant for a disposal order for the meth lab." Exhibit "B," p. 6.

### A.    Jones' Motion to Suppress (Dkt. #442)

Jones' motion to suppress asserts that the affidavit supporting the March 27, 2006 telephonic search warrant fails to establish probable cause that a search of 1420 Helm would turn up evidence of firearms, ammunition, and firearm-related accessories. The affidavit states that a confidential source told the affiant, Detective Denton, that co-defendant Tony Morgan lived in the residence with Jones and "has had approximately five different firearms in his residence." Jones contends that this information is too stale to support a finding of probable cause. Jones also argues that the affidavit's references to narcotics activity was conclusory and did not support a finding of probable cause that narcotics would be found in the searched premises. Because the issuing Justice of the Peace "provided expansive authorization to seize firearms, ammunition, and related evidence" without sufficient factual support, Jones argues her judgment and objectivity are suspect. He also asserts that because at the conclusion of the telephonic application, the Justice of the Peace said "good luck," she manifested a lack of neutrality and/or detachment. Further, Jones contends that a nighttime search was never expressly authorized by Judge Zimmerman and, therefore, the nighttime search conducted violated both Federal Rule of Evidence 41(e)(2)(A)(ii) [sic][1] and N.R.S. 179.045(6).

Jones also argues that the affidavit supporting the telephonic search warrant did not state probable cause to seize items of personal property tending to show possession, dominion, or control over the searched residence because ownership or control of the searched premises is not a crime. Paradoxically, he also argues that Detective Denton did not have reasonable grounds to request items tending to show a possessory interest in the premises because he already knew, based on his investigation, that Jones and his co-defendant, Tony Morgan, lived at the residence.

---

[1]    The motion refers to Federal Rule of Evidence 41(e)(2)(A)(ii). However, because there is no such Federal Rule of Evidence, the court surmises counsel for Jones is referring to Fed. R. Crim. P. 41(e)(2)(A)(ii).

Jones asserts that the affidavit supporting this search warrant relies almost entirely on information provided by a confidential source whose information was not corroborated and that the information he or she provided should, therefore, be given no more weight than information provided in an anonymous tip. Jones suggests that because the initial search of the residence did not find evidence of a methamphetamine lab being operated at the residence and because no firearms were found, the police failed to corroborate information provided by the confidential source that a methamphetamine lab existed, and persons in the residence were ex-felons in possession of firearms.[2]

Finally, Jones argues that the affidavit submitted by Detective Denton contained intentional or reckless omissions of fact which render the warrant invalid. He seeks a Franks hearing "to determine if the CI has a history of dishonesty that would render his/her statements unworthy of belief." Motion at 1: 20-24. He acknowledges that he is only entitled to an evidentiary hearing on the validity of the affidavit underlying the search warrant if he has made a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) without the false or misleading information, the affidavit does not support a finding of probable cause. Because the affidavit did not identify the confidential informant or provide the issuing judge with any information concerning his or her background, criminal history, or other information the judge could use to assess the veracity of the statements attributed to the source, Jones argues, the judge should not have issued the warrant. Thus, he asserts that all evidence obtained or derived from the search at 1420 Helm must be suppressed.

/ / /

/ / /

---

[2] Jones' arguments concerning what the initial search turned up are not supported by the police report he has attached as Exhibit "B" to his motion. The report lists the property that was seized during execution of the search warrant by package and item numbers. Exhibit "B," pp. 1-2. Among the items recovered in the search were gun magazines and ammunition. The report also indicates that police recovered materials for a meth lab throughout the residence and called in a narcotics detective who "responded and obtained a piggyback search warrant for a disposal order for those items." Id. at p. 3. The government's opposition does not address what items were seized during execution of the telephonic search warrant, and neither side provided the court with a copy of the search warrant return.

B.    **The Government's Omnibus Response (Dkt. #461)**

The government opposes the motion, asserting the affidavit supporting the telephonic search warrant established probable cause to believe the items to be seized would be found in the searched premises.  Alternatively, the government argues that if the court finds the warrant was not supported by probable cause, the good faith exception recognized in United States v. Leon, 468 U.S. 897 (1984), applies and precludes suppression.  The government also argues that Jones has not established he had a reasonable expectation of privacy in the searched premises.  Finally, the government contends that Jones has not met the stringent requirements necessary to establish he is entitled to a *Franks* hearing.  The government notes that Jones has not made any offer of proof supporting his bare assertion that Detective Denton intentionally or recklessly made a material omission in his search warrant application but merely speculates that the confidential source might have a history of dishonesty which was recklessly omitted from the affidavit.  The government does not mention, let alone address, Jones' arguments concerning a subsequent search warrant Jones claims was made in April 2006.  The government has also not addressed Jones' arguments concerning the nighttime execution of the search warrant.

**DISCUSSION**

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."  U.S. Const. amend. IV.  The Fourth Amendment protects reasonable and legitimate expectations of privacy.  Katz v. United States, 389 U.S. 347 (1967).  The Fourth Amendment protects "people not places."  Id.  Evidence obtained in violation of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the poisonous tree."  Wong Sun v. United States, 371 U.S. 471 (1963).

A.    **Capacity to Claim a Fourth Amendment Violation**

A person must have a reasonable expectation of privacy in the place searched to claim a violation of his or her Fourth Amendment rights.  In Rakas v. Illinois, 439 U.S. 128, 143 (1978), the Supreme Court held that the "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."  The Supreme Court has enunciated a two-part test to determine whether

1    an expectation of privacy is reasonable and legitimate.  See Katz, 389 U.S. at 361.  First, the individual

2    must have an actual subjective expectation of privacy, and second, society must recognize that

3    expectation as objectively reasonable.  Id.  The defendant bears the burden of establishing, under the

4    totality of the circumstances, that the search violated his legitimate expectation of privacy in the place

5    searched or the things seized.  Rawlings v. Kentucky, 448 U.S. 98, 104 (1980); United States v. Dorais,

6    241 F.3d 1124, 1130 (9th Cir. 2001).  It is well established that even overnight guests have a reasonable

7    expectation of privacy in a residence.  See Minnesota v. Olson, 495 U.S. 91, 96-97 (1990); United

8    States v. Davis, 332 F.3d 1163, 1167 (9th Cir. 2003).

9        The government argues that Jones has not met his burden of establishing he had a legitimate

10    expectation of privacy in the residence at 1420 Helm Street.  The government cites Minnesota v. Carter,

11    525 U.S. 83, 90-91 (1998), for the proposition that drug dealers do not have a legitimate expectation of

12    privacy in an apartment set up for manufacturing and packaging drugs.  In Minnesota v. Carter, the

13    Supreme Court held that persons present in an apartment for purposes of bagging cocaine had no

14    legitimate expectation of privacy in the searched premises and, therefore, lacked the capacity to

15    challenge the constitutionality of the search.  The Supreme Court concluded that the defendants who

16    were on the premises bagging cocaine had no legitimate expectation of privacy in the apartment

17    because of "the purely commercial nature of the transaction engaged in . . . , the relatively short period

18    of time on the premises, and the lack of any previous connection between respondents and the

19    householder."  Id. at 91.

20        Jones must have some connection with the 1420 Helm Street address to give him a reasonable

21    expectation of privacy that society accepts as objectively reasonable.  If Jones' only connection to the

22    home was to occasionally use it as a "stash house" to manufacture and sell methamphetamine or hide

23    firearms he was not permitted to possess as an ex-felon, the government's arguments would be more

24    persuasive.  Here, however, the affidavit supporting the telephonic search warrant indicated that the

25    police investigation revealed that Tony Morgan and his roommate, Ronnie Jones, lived in the searched

26    premises.  Specifically, the confidential source told Detective Denton that Tony Morgan lived in a

27    residence in the area of Sunset and Eastern and was manufacturing methamphetamine in the residence.

28    The detective investigated the information provided by the source and learned that Morgan lived at

1   1420 Helm.  He also found that a prior Las Vegas Metropolitan Police Department ("LVMPD")  police

2   report contained information about an event in which glassware and chemical odors were located at the

3   address.  At the time of the prior incident, Ronnie Jones was present.  The detective took photos of six

4   residences in the Sunset and Eastern area, including 1420 Helm, and showed them to the confidential

5   source who identified the 1420 Helm Street address as Morgan's residence.  Additionally, the police

6   report attached as Exhibit "B" to Jones' motion indicates that Detective Denton conducted a records

7   check on power to the residence "which came back active" to Morgan and Jones.  Under these

8   circumstances, the court concludes that Jones had a legitimate expectation of privacy in the residence at

9   1420 Helm Street.

### B.    Evidentiary Hearing

11          The United States Court of Appeals for the Ninth Circuit has held that an evidentiary hearing on

12  a motion to suppress need only be held if the moving papers allege facts with sufficient definiteness,

13  clarity, and specificity to enable the court to conclude that contested issues of material fact exist.

14  United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000) (citing United States v. Walczak,

15  783 F.2d 852, 857 (9th Cir. 1986); United States v. Irwin, 613 F.2d 1182, 1187 (9th Cir. 1980); United

16  States v. Carrion, 463 F.2d 704, 706 (9th Cir. 1972) ("Evidentiary hearings need be held only when the

17  moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to

18  conclude that relief must be granted if the facts alleged are proved."); United States v. Harris, 914 F.2d

19  927, 933 (7th Cir. 1990).  "A hearing will not be held on a defendant's pre-trial motion to suppress

20  merely because a defendant wants one.  Rather, the defendant must demonstrate that a 'significant

21  disputed factual issue' exists such that a hearing is required."  Howell, 231 F.3d at 621 (citing Harris,

22  914 F.2d at 933).  The determination of whether an evidentiary hearing is appropriate rests in the

23  reasoned discretion of the district court.  United States v. Santora, 600 F.2d 1317, 1320 (9th Cir.),

24  amended by 609 F.2d 433 (1979).  Jones' motion does not allege there are any significant disputed

25  factual issues.  Rather, Jones asks for an evidentiary hearing to determine whether the confidential

26  source has a history of dishonesty that would make his or her statements to Detective Denton

27  "unworthy of belief." Motion at 1 (citing Franks v. Delaware, 438 U.S. 154 (1978)).

28  / / /

1     **C.    Franks Hearing**

2     In Franks v. Delaware, the Supreme Court held that,

3     . . . where the defendant makes a substantial preliminary showing that a false
      statement knowingly and intentionally, or with reckless disregard for the
4     truth was included by the affiant in the warrant affidavit, and if the allegedly
      false statement is necessary to the finding of probable cause, the Fourth
5     Amendment requires that a hearing be held at the defendant's request.

6     438 U.S. 154, 155-156 (1978).  The Ninth Circuit has held that a defendant is entitled to a Franks

7     hearing "only if he makes a two-fold showing: intentional or reckless inclusion or omission, and

8     materiality." United States v. Bennett, 219 F.3d 1117, 1124 (9th Cir. 2000).  To meet this burden, a

9     defendant must make a substantial preliminary showing that "(1) the affidavit contains intentionally or

10    recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support

11    a finding of probable cause." United States v. Lefkowitz, 618 F.2d 1313, 1317 (9th Cir.), cert. denied,

12    449 U.S. 824 (1980); see also United States v. Stanert, 762 F.2d 775, 780 (9th Cir. 1985).  To be

13    entitled to a Franks hearing, "[t]here must be allegations of deliberate falsehood or reckless disregard

14    for the truth, and these allegations must be accompanied by an offer of proof." Hammett, 236 F.3d at

15    1058 (quoting Franks, 438 U.S. at 171).  Where the defendant makes such a showing, the Fourth

16    Amendment requires that a hearing be held at the defendant's request.  Franks, 438 U.S. at 155-56;

17    Stanert, 762 F.2d at 780.

18            Jones has not made an offer of proof or made any showing, let alone a substantial showing, that

19    Detective Denton's affidavit contains intentionally or recklessly false statements.  Rather, he requests a

20    Franks hearing "to determine whether the telephonic affidavit . . . contains intentional reckless or

21    misleading omissions and/or whether the affidavit fails to support a finding of probable cause or is

22    otherwise defective."  Motion, 1:20-24.  He argues that because Detective Denton did not reveal the

23    confidential source's identity, background, criminal history, or other information to Judge Zimmerman,

24    she could not determine whether the confidential source's information was reliable.  "When challenging

25    a warrant affidavit pursuant to Franks, the defendant must not only specify which portions are false, but

26    must also furnish affidavits or other reliable documentation in support of his challenge or satisfactorily

27    explain the absence of such supporting documentation." United States v. Fowlie, 24 F.3d 1059, 1066

28    (9th Cir. 1994) (citing Franks, 438 U.S. at 171).  Jones is not entitled to a Franks hearing based on his

7

speculation that the confidential source may have a history of dishonesty or a criminal record which Detective Denton intentionally or recklessly omitted from his affidavit.  His request for a Franks hearing is, therefore, denied.

### D.    Probable Cause to Support a Search Warrant

Probable cause is required to justify certain governmental intrusions upon interests protected by the Fourth Amendment.  See Ornelas v. United States, 517 U.S. 690, 695 (1996); Illinois v. Gates, 462 U.S. 213, 241 (1983).  Probable cause to search exists when there is "a fair probability that contraband or evidence of a crime will be found in a particular place," i.e., the place to be searched. Gates, 462 U.S at 238.  "Whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a 'common sense, practical question.'" United States v. Kelley, 482 F.3d 1047 (9th Cir. 2007) (citingUnited States v. Gourde, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc)).

A determination of whether probable cause exists is made by examining the totality of the circumstances.  Gates, 462 U.S. at 241.  The Supreme Court has repeatedly emphasized that the probable cause standard is a "practical, non-technical conception."  Brinegar v. United States, 338 U.S. 160, 176 (1949).  A probable cause determination is two-fold.  First, a court must determine "historical facts," that is, the events leading up to the stop or search.  Ornelas, 517 U.S. at 696.  Second, the court must determine "whether those historical facts, viewed from the standpoint of a reasonable police officer," amount to probable cause.  A judge's decision regarding probable cause should be given great deference.  Id. at 698-99.  The duty of a reviewing court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed.  Id.; see also United States v. Neilsen, 371 F.3d 574, 579 (9th Cir. 2004).  A reviewing court is required to examine all the circumstances set forth in the affidavit, and in doubtful cases, to give preference to the validity of the warrant.  United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir. 1985), cert. denied, 474 U.S. 874 (1985).

Facts supporting probable cause can come from several sources, including the observations of law enforcement who use their expertise and training to draw inferences of criminal activity from behavior that is not criminal on its face.  See, e.g., Alford v. Haner, 446 F.3d 935, 937 (9th Cir. 2006) (probable cause to arrest for impersonating officer where police observed police radio, scanner, and

1  handcuffs in car). Law enforcement can also use facts ascertained from a confidential informant. See,

2  e.g., United States v. Reeves, 210 F.3d 1041, 1045-46 (9th Cir. 2000) (probable cause for search

3  warrant even though informant had criminal record because informant had previously provided reliable

4  information). Moreover, a "magistrate may rely on the conclusion of experienced law enforcement

5  officers regarding where evidence of a crime is likely to be found." United States v. Fannin,

6  817 F.2d 1379, 1381 (9th Cir. 1987). An officer need not include all information in his possession to

7  obtain a search warrant, but instead, need only show facts adequate to support a finding of probable

8  cause. United States v. Johns, 948 F.2d 599, 605 (9th Cir. 1991). "Trustworthy information" must be

9  used to support a probable cause determination and can include a tip from an informant so long as the

10  tip is reliable. See Gates, 462 U.S. at 283. Reliability may be shown by the informant's past record of

11  reliability, through independent confirmation, personal observation by law enforcement, or other means.

12  See Alabama v. White, 496 U.S. 325 (1995).

13       When a search warrant is based solely on an informant's tip, the "proper analysis is whether

14  probable cause exists from the totality of the circumstances to determine a sufficient level of reliability

15  and basis of knowledge for the tip." United States v. Bishop, 264 F.3d 919, 924 (citing Gates, 462 U.S.

16  at 238). One of the factors that courts consider is the informant's basis of knowledge – that is "how

17  the informant came by his or her knowledge." Id. at 925 (citing United States v. Angulo-Lopez,

18  791 F.2d 1394, 1396 (9th Cir. 1986)). In Bishop, the Ninth Circuit found that because the informant

19  had first-hand knowledge that the defendant had "cooked" methamphetamine the day before the

20  application for the search warrant was made, the informant's tip was more reliable. "The veracity of an

21  informant's information is also considered when reviewing the totality of the circumstances." Id. at

22  925. A court may find an informant's information is reliable based on independent police corroboration

23  of the information provided by an informant. Id. (citing United States v. Freitas, 716 F.2d 1216, 1222

24  (9th Cir. 1983)). A court may also consider whether an informant's information is an admission against

25  penal interest in evaluating the reliability of the informant's information. Id. (citing United States v.

26  Harris, 403 U.S. 573, 583-84 (1971)).

27  / / /

28  / / /

9

1        Applying these principles, the court finds the application and affidavit established probable

2    cause to search for the items specified.[3]  Detective Denton sought judicial authorization to search the

3    residence at 1420 Helm in Las Vegas, Nevada, for firearms, ammunition, firearms-related accessories,

4    and papers, documents, and effects tending to show possession, dominion, or control over the premises.

5    Detective Denton was sworn under oath and provided his statement of probable cause to Judge

6    Zimmerman on March 27, 2006 shortly after 8:00 p.m.  The affidavit relates that he is a detective with

7    the Las Vegas Metropolitan Police Department ("LVMPD") and assigned to the Firearms Detail.  On

8    March 13, 2006, he was called to the Clark County Detention Center ("CCDC") in Las Vegas, Nevada,

9    to investigate crimes of possession of firearm by an ex-felon.  At CCDC, he received information from

10   a source of information whose identity was known to him but not disclosed to the judge.  The source

11   told Detective Denton that Tony Morgan was manufacturing methamphetamine in his residence in the

12   area of Sunset and Eastern.  Morgan was described as a white male adult, forty years old, who was

13   5'9" tall, and 160 pounds,   His source related that Morgan had connections out of state who shipped

14   him iodine to make methamphetamine and that Morgan had received four gallons of iodine on March 8,

15   2006.  The source related that Morgan manufactured a quarter pound of methamphetamine in his

16   residence at Sunset and Eastern the evening of March 8, 2006 and gave the source a small amount of

17   methamphetamine that evening, along with a .25 caliber handgun.  The source was arrested with the

18   handgun and methamphetamine the same night.  The source told Detective Denton that over the past

19   three weeks, Morgan has had five different firearms in his residence, including a .380, a .45, and a

20   .9mm handgun.  The source described Morgan's residence and its surrounding area.

21       After speaking with the source, Detective Denton attempted to locate Morgan's residence, using

22   the directions and description the source described.  Denton located a LVMPD police report filed under

23   Incident 041225-0762 concerning an address at 1420 Helm which indicated glassware and chemical

24   odors were located at this address "which indicated a lab may be present."  A registered felon identified

25

---

26       [3] Jones attached a highly redacted transcript of the telephonic search warrant application and

27   affidavit.  However, the government attached an unredacted application and affidavit to its response
which is now part of the public record.  This report summarizes the content of the unredacted

28   application and affidavit.

1   as Ronnie Jones was present at the time of the event described in the report.  Jones was a registered

2   felon for robbery convictions in 1978 and 1979.  Detective Denton's source told Denton that Jones was

3   a roommate of Morgan who had been at Morgan's residence "almost everyday for the past three

4   weeks."  Denton conducted a records check on the power at the residence at 1420 Helm "which came

5   back active" as of October 11, 2005 to a Tony Morgan and a Ronnie Jones whose social security

6   numbers were identified in the affidavit.

7        Denton took photos of six residences in the area of Sunset and Eastern, including 1420 Helm

8   and showed them to the source on March 16, 2006.  The source identified the photo of 1420 Helm as

9   Morgan's residence.  Denton conducted a records check on Morgan and found an individual with a

10  04/16/69 date of birth and the same social security number as that listed on power to the residence.

11  Police records described Morgan as a white male adult, 5'10" tall, and 175 pounds which matched the

12  description given by the source.  The records check also revealed Morgan had multiple felony

13  convictions for drug possession and trafficking offenses and possession of a stolen vehicle between

14  1988 and 2003.  Morgan also had prior arrests for manufacturing controlled substances in 2003 and

15  1997, and numerous other narcotics-related offenses.  Denton compiled a group of six photographs

16  which included Morgan and showed them to the source who immediately picked out Morgan as the

17  individual described.

18       Denton told Judge Zimmerman that the source was not promised anything for his information

19  and that the source indicated Morgan manufactured about a quarter pound of methamphetamine

20  approximately every week as needed.  The source told Denton he had never seen Morgan without a

21  firearm in his residence.

22       Denton and fellow officers set up surveillance on the residence at 1420 Helm on March 16,

23  March 17, March 20, and March 23, 2006.  Officers observed various individuals arrive at the residence

24  and stay for a short period of time.  License plate numbers of individuals arriving at the residence were

25  noted and records checks conducted.  One of the vehicles observed was registered to an individual

26  named in the affidavit who had prior arrests for narcotics-related offenses.  On March 23, 2006,

27  Detective Andrade observed a hand-to-hand transaction between two white male adults who met at the

28  gate outside the residence and then entered the residence.  One of the two white males observed making

1    the hand-to-hand transaction left the residence and was stopped by a marked patrol unit.  The vehicle

2    was driven by Cecil Martin, a convicted felon for possession of methamphetamine in 2002.  Martin also

3    had prior arrests for DUI/drugs, possession of methamphetamine, and loitering for drugs.  Less than an

4    hour after this individual was stopped, surveillance officers observed another white male enter and

5    leave 1420 Helm Street after a short time.  A marked patrol unit stopped this vehicle for traffic

6    infractions and identified the driver as Charles Gensemer.  A records check indicated Gensemer was a

7    convicted felon for manufacturing a controlled substance in 1996, with prior arrests for DUI/drugs, and

8    manufacturing controlled substances.  Gensemer had a chemistry book in his vehicle at the time of the

9    stop.

10          Additional surveillances were conducted March 25, 2006 and March 27, 2006.  During the

11    March 27, 2006 surveillance, officers were approached by a "concerned citizen" who indicated he had

12    been working in the area for the past three weeks at around 2:00 and 3:00 in the morning and had

13    observed numerous vehicles coming and going from the residence.  The concerned citizen advised

14    officers that he believed he was observing narcotics-related activities.

15          Detective Denton related that these observations made during surveillance were consistent with

16    narcotics activity, specifically, heavy traffic of all kinds in and out of the residence with a majority of

17    individuals staying for short amounts of time.  Denton described the premises and requested permission

18    to seize firearms, ammunition, firearms-related accessories, and paperwork and effects tending to show

19    possession, dominion, and control of the searched premises.  He related that he believed the items to be

20    seized constituted evidence of possession of firearm by ex-felon and possession of a controlled

21    substance for sale in violation of Nevada law.  The affidavit related that because ex-felons cannot

22    legally purchase or sell firearms, they are extremely valuable to ex-felons who tend to keep them for

23    long periods of time.  He requested authorization to serve the search warrant at night based on his

24    training and experience that the longer a search was delayed, the greater the chance that evidence would

25    diminish in evidentiary value and would delay identification of the perpetrators.  He also suggested

26    there might be surveillance cameras at the residence and that SWAT officers needed the "concealment

27    of the night to approach the residence."

28    / / /

12

1       Based on these representations, Judge Zimmerman found probable cause existed for the

2   issuance of the search warrant.  She was asked whether she authorized a nighttime search and sealing of

3   the affidavit.  The transcript indicates there was a pause between Detective Denton's request for a

4   nighttime authorization and to seal the affidavit and that Judge Zimmerman answered "yes, I thought I

5   lost you."  Detective Denton responded "yeah, sorry about that" and received the judge's permission to

6   sign her name to both duplicate originals, one to remain with the officer and one to be left at the

7   searched premises.  Judge Zimmerman responded "good luck," and the conversation ended.

8       Denton's affidavit was based on information he received directly from the source of information

9   whose identity was known to him.  Denton told Judge Zimmerman that the source had not been

10  promised anything and related what he did to confirm information the source provided.  The source

11  claimed to have first-hand knowledge that Morgan was manufacturing methamphetamine out of the

12  residence and had multiple firearms in the house.  The source also indicated he had never seen Morgan

13  in the residence without a firearm. The informant had been arrested for possession of methamphetamine

14  and a .25 caliber handgun March 8, 2006, which he claimed that he received from Morgan.  Denton's

15  investigation corroborated the fact that Tony Morgan, who matched the description the source provided,

16  resided at the residence and had power in his name and the name of his roommate, Ronnie Jones. The

17  source claimed he had been in Morgan's residence almost every day for the past three weeks and that

18  Morgan manufactured a quarter pound of methamphetamine approximately every week, or as needed.

19  The source acknowledged he was in possession of the .25 caliber handgun and methamphetamine and

20  his information was, therefore, an admission against his penal interests. Police officers conducting

21  surveillance between March 16 and March 27, 2006 observed activity consistent with drug trafficking,

22  and identified a number of individuals with felony arrests and convictions for drug-related offenses,

23  including convictions for manufacturing controlled substances. In short, under the totality of the

24  circumstances, the court finds the issuing judge had a substantial basis for believing that contraband or

25  evidence of the crimes of felon in possession of a firearm and manufacturing methamphetamine would

26  be found in the searched premises.

27  / / /

28  / / /

13

**E.    The Good Faith Exception**

For the reasons set forth in the preceding section, the court has found that the search warrant was based on probable cause.  However, even if probable cause was lacking, it is well established that suppression of evidence is not an appropriate remedy if the officers who executed the search warrant reasonably believed the warrant to be valid.  In <u>United States v. Leon</u>, 468 U.S. 897 (1984), the United States Supreme Court held that the exclusionary rule should not bar evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, but ultimately found to be unsupported by probable cause.  Adopting a good faith reliance test, the Supreme Court reasoned that the rationale for the Fourth Amendment exclusionary rule was to deter unlawful <u>police</u> conduct.  If, after reviewing an affidavit and application for a search warrant, an issuing judge incorrectly concludes the affidavit states probable cause, the mistake is made by the judge not the police officer.  Since the purpose of the exclusionary rule is not furthered by the exclusion of evidence taken under circumstances in which it is the judge, rather than the police officer, who makes the mistake, the officer's "good faith" in applying for the search warrant precludes suppression of evidence as long as the officer's reliance on the warrant was objectively reasonable.  Evidence seized pursuant to a facially valid search warrant which later is held to be invalid may nevertheless be admissible if officers conducting the search acted in "good faith" and in reasonable reliance on the warrant.  <u>Leon</u>, 468 U.S. at 926.  Thus, evidence seized pursuant to a search warrant in this case is admissible, even if the issuing judge erred in finding probable cause under the <u>Leon</u> "good faith" doctrine.

<u>Leon</u> recognized four circumstances in which the "good faith" doctrine would not apply to avoid suppression.  They include: (1) where the issuing magistrate was misled by information in the affidavit which was knowingly or recklessly false; (2) where the issuing magistrate had abandoned the detached and neutral judicial role; (3) where the affidavit was so lacking in probable cause as to render official belief in its existence entirely unreasonable; or (4) where the warrant is so facially deficient in failing to particularize the place to be searched or things to be seized that the executing officers could not reasonably presume it to be valid.

Jones asks for a <u>Franks</u> hearing to explore whether Detective Denton's affidavit contains intentionally or recklessly false statements but did not provide an offer of proof or allege that Detective

1  Denton made intentional, reckless, or misleading omissions in his affidavit.  Jones also does not claim

2  that the affidavit was so lacking in probable cause as to render official belief in its existence entirely

3  unreasonable or that it is so facially deficient in failing to particularize the place to be searched or things

4  to be seized that the executing officers could not reasonably presume it to be valid.  Rather, he claims

5  that Judge Zimmerman abandoned her neutral and detached judicial role by authorizing an "expansive

6  search" and wishing Detective Denton "good luck" after authorizing the warrant.

7       The determination of whether there is probable cause to issue a search warrant must be made

8  "by a neutral and detached magistrate instead of being judged by the officer engaged in the often

9  competitive enterprise of ferreting out crime."  Johnson v. United States, 333 U.S. 10, 14 (1948).  A

10  magistrate may not serve as a "rubber stamp" for the police.  Leon, 468 U.S. at 914.  Jones has not cited

11  any cases in support of his argument that a judge who says "good luck" or something similar at the end

12  of a recorded and transcribed search warrant application establishes a lack of detachment or neutrality.

13  The government did not address Jones' argument at all.

14       In LO-JI Sales, Inc., v. New York, 442 U.S. 319 (1979), the Supreme Court held that a town

15  justice who issued a warrant and then allowed himself to actively participate in a search of an adult

16  book store and independently determine if any items in the store were obscene was not acting as a

17  neutral and detached judicial officer but "as an adjunct law enforcement officer."

18       The court's own limited research found no case establishing a standard the court should apply in

19  determining whether a judicial officer acted in a neutral and detached manner.  Wishing a police officer

20  "good luck" after authorizing a search warrant could be construed as an expression of encouragement or

21  hope that the search warrant will result in the recovery of evidence of a crime.  It could also be

22  reasonably construed as a pleasantry or expression of civility.  Judge Zimmerman was aware that the

23  telephonic search warrant application was being recorded.  Nevada law permits a telephonic search

24  warrant application but requires that the probable cause statement must be recorded either by a certified

25  court reporter or by electronic means, and that a transcript be prepared and certified by the magistrate.

26  See N.R.S. 179.045(2).  This procedure ensures that there is an accurate record of communications

27  between the law enforcement officer seeking a search warrant and the issuing judge.

28  / / /

15

1     In United States v. Ramirez, 63 F.3d 937 (10th Cir. 1995), the defendant argued that the judge

2  who issued a search warrant abandoned his judicial role and was no longer neutral and detached from

3  the police investigation because he inserted additions to the affidavit.  The Tenth Circuit found this

4  conduct "troubling" because the content of an affidavit supporting a search warrant application is

5  "generally the province of law enforcement officers."  Id. at 940.  However, the Tenth Circuit declined

6  to adopt any *per se* rule requiring suppression whenever a magistrate alters an affidavit, stating,

> 7     Whether a magistrate was neutral and detached in any particular case is
> 8   necessarily an individualized and contextual inquiry.  Courts must focus on
>     the specific circumstances surrounding the issuance of the warrant and
>     decide whether the magistrate "manifest[ed] that neutrality and detachment
> 9   demanded of a judicial officer when presented with a warrant application for
>     a search and seizure."

10

11  Id. at 941 (citing LO-JI Sales, 442 U.S. at 326).  The issuing judge altered the affidavit to permit the

12  executing officers to search the defendant himself and seize his key to the building.  The court found

13  that the judge's addition to the affidavit "were mere common sense extensions of the contents of the

14  narrative portion of the same affidavit" and did not indicate that the judge breached his duty to be a

15  neutral and detached magistrate.

16     Placing Judge Zimmerman's remark in context–at the conclusion of a recorded and transcribed

17  application for a search warrant–the court finds that her expression of "good luck" cannot reasonably be

18  construed, by itself, as a manifestation that she abandoned her neutral and detached role.  See, e.g.,

19  United States v. Loy, 569 F. Supp. 2d 601, 606-607 (N.D. W. Va. 2008) (magistrate who is a former

20  chief of police did not abandon his neutral and detached role by appearing at the police station after

21  hours to review the search warrant application or by directing officers to attach the informant's

22  statement to the warrant application); United States v. McKeever, 906 F. 2d. 129, 132 (5th Cir. 1990)

23  (magistrate's "former position as a reserve peace officer, her husband's position as a reserve deputy,

24  and her visit to the site of the search did not effect her objectivity such that she was no longer neutral

25  and detached."); United States v. Pennington, 328 F. 3d. 215, 219 (6th Cir. 2003) (search warrant issued

26  by judicial commissioner appointed by county commission who was not a judge or an attorney did not

27  violate Fourth Amendment requirement that warrant be issued by a neutral and detached magistrate).

28  / / /

1        **F.    Fed. R. Crim. P. 41 and N.R.S. 179.045(6)**

2        NRS 179.045(6) authorizes a search between the hours of 7:00 a.m. and 7:00 p.m., unless, for

3    good cause shown, the issuing judge authorizes otherwise. Rule 41 of the Fed. R. Crim. P. governs the

4    issuance and execution of search warrants but "does not modify any statute regulating search or

5    seizure." Fed. R. Crim. P. 41(a)(1). A daytime search warrant may be executed between the hours of

6    6:00 a.m. and 10:00 p.m. in the federal system. Rule 41(a)(2)(B). In the federal system, a warrant must

7    be executed during the daytime, "unless the judge for good cause expressly authorizes execution at

8    another time." Rule 41(e)(2)(B). The search warrant challenged here was applied for by state law

9    enforcement officers and issued by a state judge.

10        Whether a search is essentially a federal one, and thus governed by Rule 41, is a factual inquiry.

11    See United States v. Palmer, 3 F.3d 300, 303 (9th Cir. 1993). Rule 41 does not apply to a search

12    performed by local officials unless the search is "federal in character." See United States v. Crawford,

13    657 F.2d 1041, 1046 (9th Cir. 1981). "Generally, a search warrant is federal if from the beginning it

14    was assumed a federal prosecution would result." United States v. Radlick, 581 F.2d 225, 228 (9th Cir.

15    1978). However, a federal officer's "mere participation" in a search does not make it a federal one.

16    Byars v. United States, 273 U.S. 28, 32 (1927). Neither side addressed whether the search warrant in

17    this case was "federal in character." The government did not even respond to the defendant's

18    arguments concerning the nighttime execution of the search warrant. However, it is clear from a review

19    of the motion and attached supporting exhibits that the search warrant was applied for by a LVMPD

20    Firearm Detail detective in connection with a state investigation of a felon in possession of firearms and

21    possession and/or manufacturing of methamphetamine. There is no indication from any of the papers

22    that have been submitted to the court that any federal officer participated in the investigation, the

23    application, or execution of the search warrant in this case. Therefore, the provisions of Rule

24    41(e)(2)(B) do not apply because the search warrant challenged in this case was not federal in character.

25        Moreover, the Supreme Court has held that the Federal Rules of Criminal Procedure do not

26    "constitute a statutory expansion of the exclusionary rule." United States v. Calandra, 414 U.S. 338,

27    348 (1974). The Ninth Circuit has identified three circumstances under which evidence obtained in

28    violation of Fed. R. Crim. P. 41 requires suppression. United States v. Williamson, 439 F.3d 1125,

1133 (9th Cir. 2006).  First, where the violation rises to a "constitutional magnitude."  Id.  Second,

where the defendant was prejudiced either because the search would not have occurred or "would not

have been so abrasive" if the Rule had been followed.  Id.  Third, where the officers executing the

search warrant acted in "intentional and deliberate disregard" of the Rule.  Id.  In Williamson, the Ninth

Circuit recognized that its prior decisions and those of the Supreme Court have repeatedly held "that

suppression is rarely the proper remedy for a Rule 41 violation."  Id. at 332.

Jones next contends that officers executing the search warrant violated the provisions of Nevada

state law, specifically, N.R.S. 179.045(6).  However, Rule 502 of the Federal Rules of Evidence

governs the admissibility of evidence in federal court.  It provides:

> All evidence is admissible except as otherwise provided by the Constitution
> of the United States, by Act of Congress, by these rules, or by other rules
> prescribed by the Supreme Court pursuant to statutory authority.  Evidence
> which is not relevant is not admissible.

Id.

The Ninth Circuit has "consistently held that evidence obtained by federal officials acting in

concert with state officials in violation of state law but in compliance with federal law is admissible in

federal court."  United States v. Chavez-Vernaza, 844 F.2d 1368 (9th Cir. 1988) (collecting cases).  The

Ninth Circuit has also squarely held "that the admissibility of evidence obtained in violation of state

law turns on whether a federal right has been infringed, not on the presence or absence of federal

involvement at the evidence-gathering stage of an investigation."  Id. at 1373.  In Chavez-Vernaza, the

Ninth Circuit adopted the reasoning of the Second and Third Circuits, holding "that requiring federal

district courts to look to state law when determining the admissibility of evidence obtained in

accordance with federal law would hamper the enforcement of valid federal laws and undermine the

policy favoring uniformity of federal evidentiary standards."  Id. at 1374.  The court, therefore, rejected

the defendant's arguments that federal courts should defer to state law in deciding whether to admit

evidence seized by state officers and held that "evidence seized in compliance with federal law is

admissible without regard to state law."  Id.  In United States v. Cormier, 220 F.3d 1103 (9th Cir.

2000), the Ninth Circuit reaffirmed Chavez-Vernaza, holding:

> The general rule, therefore, is that evidence will only be excluded in
> federal court when it violates federal protections, such as those contained

1    in the Fourth Amendment, and not in cases where it is tainted solely under

2    state law.

3    220 F.3d at 1111.

4    There are two exceptions to this general rule, neither of which apply here. "The first exception

5    arises when a court is determining the legality of an inventory search." Id. This is because federal law

6    on inventory searches by state or local police officers requires that they must comply

7    with the official procedures of the state or local police department conducting the inventory search.

8    Id. (internal citations and quotations omitted.) "The second exception arises in search incident to

9    arrest." Id. Again, the rationale for this exception is that "federal courts must determine the

10   reasonableness of the arrest in reference to state law governing the arrest." Id. (quoting United States v.

11   Mota, 982 F.2d 1384, 1388 (9th Cir. 1993)). The reason for these two exceptions "is that the federal

12   test for the legality of an inventory search and a search incident to arrest requires the incorporation of

13   state law." Id. Thus, the Cormier court concluded "[s]tate law is only relevant in determining the

14   admissibility of evidence in federal court when the constitutional test for determining the legality of a

15   search incorporates state law."

16   Here, Jones challenges the constitutionality of the search of the residence at 1420 Helm on

17   Fourth Amendment grounds. The Fourth Amendment secures the right of citizens to be secure against

18   unreasonable searches and seizures. It "says nothing specific about formalities in executing a warrant's

19   authorization." United States v. Banks, 540 U.S. 31, 35 (2003). In Hudson v. Michigan, 547 U.S. 586,

20   589 (2006), the Supreme Court held that the knock and announce rule was a common law principle and

21   "a command of the Fourth Amendment." However, the court held that the rule did not protect a

22   citizen's "interest in preventing the government from seeing or taking evidence described in a warrant."

23   Id. at 594. Because the interests that are violated when police fail to knock and announce their presence

24   prior to execution of the search warrant "have nothing to do with the seizure of the evidence, the

25   exclusionary rule is inapplicable." Id.

26   The application and affidavit for the telephonic search warrant in this case clearly reflect that

27   Detective Denton requested authorization for a nighttime search. It appears from a review of the

28   transcript that there was some problem with the telephone transmission as immediately after Detective

19

1  Denton asked whether the judge would authorize a nighttime search clause defendant Denton asked

2  "Judge?" the transcript reflects a pause, and another question by Detective Denton concerning whether

3  the judge would authorize sealing the affidavit.  Judge Zimmerman responded "Yes, I thought I lost

4  you."  The telephonic application was tape recorded, transcribed, and reviewed by Judge Zimmerman

5  on March 29, 2006 who found it was a true and accurate transcript of the telephonic search warrant she

6  authorized on March 27, 2006.  Thus, it is reasonable to infer that Judge Zimmerman authorized

7  nighttime execution of the search warrant.  However, even if Judge Zimmerman did not explicitly

8  authorize a nighttime search, under the Supreme Court's rationale in <u>Banks</u> and <u>Hudson</u>, the

9  exclusionary rule is inapplicable, and suppression of the evidence seized pursuant to a valid warrant is

10 not the appropriate remedy.  Detective Denton's request for judicial authorization for the nighttime

11 search belies any suggestion that he was attempting to deliberately disregard the provisions of N.R.S.

12 179.045(6).

13                                              **<u>CONCLUSION</u>**

14         The police investigation which resulted in issuance of the search warrant challenged in this case

15 reflects Jones resided at the searched premises.  Jones therefore had a legitimate and reasonable

16 expectation of privacy in the searched premises and may challenge the search on Fourth Amendment

17 grounds.  Jones' moving papers have not alleged facts with sufficient definitiveness, clarity, and

18 specificity to enable the court to conclude that there are any significant disputed factual issues.  He is

19 therefore not entitled to an evidentiary hearing.  Jones has also not made an offer of proof or specified

20 what portions of Detective Denton's affidavit he alleges are false or which contain reckless omissions,

21 and he is, therefore, not entitled to a <u>Franks</u> hearing.

22         The judge who issued the search warrant did not fail to be a neutral and detached magistrate

23 because she wished Detective Denton "good luck" at the conclusion of the telephonic search warrant

24 application which was recorded and transcribed.  Examining the affidavit supporting the search warrant

25 the court concludes that Judge Zimmerman had a substantial basis for concluding that probable cause

26 existed.  Moreover, even if the affidavit was deficient the officers executing the search warrant acted in

27 good faith and in reasonable reliance on the warrant.  Suppression is therefore not required.

28 / / /

1    This warrant is not federal in character, and therefore Fed. R. Civ. P. 41(e)(2)(B) does not apply.

2    Detective Denton applied for authorization from Judge Zimmerman for nighttime execution under

3    Nevada law.  It appears from the transcript of the telephonic application, and the fact that Judge

4    Zimmerman reviewed and determined the transcript was correct and accurate that she authorized

5    nighttime execution.  However, even if the transcript is ambiguous, Detective Denton's application for

6    judicial authorization for a nighttime search indicates he was not acting in intentional and deliberate

7    disregard of the provisions of N.R.S. 179.045(6) and the exclusionary rule should not be applied.

8          For all of the foregoing reasons,

9          **IT IS THE RECOMMENDATION** of the undersigned United States Magistrate Judge that

10   Jones' Motion to Suppress Evidence (Dkt. #442) be DENIED.

11         Dated this 12th day of March, 2009.

12

13                                    _____
                                      PEGGY A. LEEN
14                                    UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                             21